NOT FOR PUBLICATION

FILED
JAMES J. WALDRON, CLERK
**MAY 4, 2012**
U.S. BANKRUPTCY COURT
NEWARK, N.J.
BY: s/ Ronnie Plasner, DEPUTY

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **In Re:** | Case No.: | 09-15985 (DHS) |
| **GLOBAL OUTREACH, S.A.,** | Judge: | Donald H. Steckroth, U.S.B.J. |
| Debtor. | | |
| **Global Outreach, S.A.,** | Adv. No.: | 09-01415 (DHS) |
| Plaintiff, | | |
| **Official Committee of Unsecured Creditors of Global Outreach, S.A.** | | |
| Intervenor-Plaintiff. | | |
| v. | | |
| **YA Global Investments, L.P.,** | | |
| Defendant. | | |
| **YA Global Investments, L.P.,** | Adv. No.: | 09-01712 (DHS) |
| Plaintiff, | | |
| v. | | |
| **Global Outreach, S.A., et al.,** | | |
| Defendants, | | |
| **Official Committee of Unsecured Creditors of Global Outreach, S.A.** | | |
| Intervenor-Defendant. | | |

**OPINION**

**APPEARANCES**

**COLE SCHOTZ MEISEL FORMAN & LEONARD, P.A.**
Warren A. Usatine, Esq.
Court Plaza North
25 Main Street
P.O. Box 800
Hackensack, New Jersey 07602
*Counsel for Plaintiff*

**PHILLIPS NIZER LLP**
Bruce J. Turkle, Esq.
Court Plaza North, 6th Floor
25 Main Street
P.O. Box 800
Hackensack, New Jersey 07602
*Counsel for Defendants*

**THE HONORABLE DONALD H. STECKROTH, BANKRUPTCY JUDGE**

Before the Court is a motion for partial summary judgment brought by YA Global Investments, L.P. ("YA") against Global Outreach, LLC, Global Financial Group, LLC, The Kothari Family 2000 Trust ("Trust"), Anil C. Kothari ("Kothari"), and Hemangini Kothari (collectively, the "Defendants"). The motion arises from a lending transaction between YA and Global Outreach, S.A. ("Debtor"). As a condition to the transaction, YA required the Defendants to execute unconditional guaranty agreements ("Guaranty Agreement" or "Guarantees") for all amounts due under the various loan documents. YA now seeks declaratory judgment that the Debtor and the Defendants defaulted under the loan documents and the Guarantees. The Defendants oppose the motion on grounds that YA violated the implied covenant of good faith and fair dealing by manufacturing the defaults in an attempt to wrest control of a real estate development project from the Debtor. Defendant Kothari further argues that YA induced him to sign the Guaranty by assuring him, via e-mail, that YA would exhaust its remedies against the Debtor before enforcing the Guarantees against his personal assets.

YA, on the other hand, notes that the Court previously considered, and dismissed with prejudice, claims brought by both the Debtor and the Defendants that YA allegedly breached the implied covenant of good faith. Therefore, YA argues that the defense now asserted by the Defendants has been removed from the case. Lastly, YA argues that its alleged promise to the Kotharis that it would exhaust its remedies against the Debtor before enforcing the Guarantees against their personal assets clearly contradicts the express terms of the guaranty agreements and thus, is barred by the parol evidence rule. For the reasons that follow, summary judgment is granted in YA's favor.

The Court has jurisdiction over this motion pursuant to 28 U.S.C. § 1334 and the Standing Order of Reference from the United States District Court for the District of New Jersey dated July 23, 1984. This matter is a non-core proceeding pursuant to 28 U.S.C. § 157. Venue is proper under 28 U.S.C. §§ 1408 and 1409.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

**I.    Plaintiff's Facts**

In 2007, the Debtor sought and obtained financing from YA in an effort to develop a 550-acre luxury resort located in Guanacaste, Costa Rica ("Property"). (Pl.'s R. 56.1 Stmt. of Material Facts ("Pl.'s Stmt. of Facts"), ¶ 1) On July 19, 2007, YA refinanced multiple bridge loans it made to the Debtor by extending a $41 million loan, evidenced by a promissory note ("Note") and a note purchase agreement ("NPA"). (*Id*. at ¶ 2) Under Section 9 of the Note, a default occurs upon:

> (a) [The Debtor's] failure to make any payment of (x) principal or interest on this Note when due hereunder, or (y) any other obligation of [the Debtor] when due, subject to amounts being contested in good faith, individually or in the aggregate amount of $100,000.00;

3

> (b) default by [the Debtor] in the performance of any other obligation, covenant, term or provision contained in this Note, the Securities Pledge Agreements, the Note Purchase Agreement, the Security Agreement, the Monitoring Agreement, the Guarantees, the mortgages on any of the Properties or any other material agreement to which [the Debtor] is a party, and such default shall continue uncured for a period of ten (10) days or more after receipt of written notice of such default from the party entitled to such performance[.]

(*Id.* at ¶ 3)

As a condition to the Note, YA required the Defendants to sign identical, unconditional Guaranty agreements. The Guarantees provide that "[the Defendants] irrevocably, absolutely and unconditionally guarantee[] to [YA] the prompt and complete payment and performance when due (whether at stated maturity, by acceleration or otherwise) of all principal, interest and other amount under the Note." (Cert. of Troy Rillo is Supp. of Partial Summ. J. ("Rillo Cert."), Ex. C at p. 1) Indeed, under the Guarantees, the Defendants purportedly waived any requirement that YA exhaust its remedies against the Debtor before pursuing the Defendants. (*Id.* at p. 4) The Guarantees further provide that the Defendants waived "[a]ny defenses from disability or other defense of [the Debtor]" as well as "[a]ny setoff, defense, or counterclaim against [YA] . . . ." (*Id.*)

As a result of several alleged defaults, [1] YA filed a complaint against the Defendants and the Debtor in New Jersey Superior Court on April 16, 2008 ("State Action"). (Pl.'s Stmt. of Facts, ¶ 5) The Defendants and the Debtor participated in the action, filing an answer, counterclaims, and third party complaint. (*Id.*) On November 17, 2008, the state court granted partial summary judgment in favor of YA stating that "[b]y failing to sell 32 condominium units by August 1, 2008, [the Debtor] has committed a material breach under the [Note]." (*Id.* at ¶ 11) YA similarly alleged defaults under the Guarantees. (*Id.*)

On March 12, 2009, the Debtor filed for chapter 11 relief. The Debtor removed the State Action to the United States District Court. The matter was subsequently referred to this Court ("Removed Proceeding").[2] On March 20, 2009, the Debtor commenced an adversary proceeding against YA and its officers ("Adversary Proceeding"). The Debtor filed an amended complaint

---

[1] YA filed a reply memorandum in response to the Defendants opposition papers [Adv. Pro. 09-01415, ECF Doc. 129]. In its reply, YA removed from the Court's consideration issues relating to the Debtor's failure to make certain equity participation payments. YA re-calculated its proposed money judgment to include only the loan principal and pre- and post-default interest. (*See* Pl.'s Reply Br. in Supp. of Mot. for Partial Summ. J. ("Pl.'s Reply Br."), pp. 12-14) Accordingly, the Court does not make any finding with respect to the equity participation payments.

[2] Adv. Pro. No. 09-01712

in that proceeding asserting, among others things, many of the same claims that were asserted against YA in the counterclaims in the State Action. (Pl.'s Br., p. 7) The parties filed competing motions for summary judgment in both the Removed Proceeding and the Adversary Proceeding. (*Id*.) On January 29, 2010, the Court entered summary judgment for YA against the Debtor and dismissed all but one claim of the Debtor with prejudice. On March 16, 2010, the Defendants consented to entry of summary judgment in YA's favor and dismissal with prejudice of their counterclaims.

In the Removed Proceeding, the Court entered summary judgment against YA avoiding certain transfers as fraudulent conveyances and disallowing the equity participation payments as usurious. (*Id*.) Appeal was taken and the District Court upheld YA's claim for the principal – $41 million plus interest. (*Id*. at pp. 7-8) As a result, YA filed the instant motion for partial summary judgment alleging that the Defendants have failed to make any payments under the Note. Accordingly, YA asserts an entitlement, under the Guarantees, to pursue each Defendant for the amount due. (*Id*. at p. 9; Rillo Cert. at ¶¶ 12-15, 17-18)

Finally, YA asserts a claim under the Note and the Guarantees for costs and attorneys' fees incurred in this proceeding. Section 16 of the Note provides the following: "[The Debtor] promises to pay to [YA], on demand by [YA], all costs and expenses incurred by [YA] in connection with the collection and enforcement of this Note or any portion hereof, including, without limitation, all court costs . . . ." (Pl.'s Br., p. 9; Rillo Cert., Ex. A at 8) The Guarantees similarly provide that "[the Defendants] shall pay, promptly on demand, all Expenses incurred by [YA] in defending and/or enforcing this Guaranty. . . . "Expenses" shall mean costs and expenses []including reasonable fees and disbursements of any law firm . . . for defending and/or or enforcing this Guaranty . . . ." (Pl.'s Br., p. 10; Rillo Cert., Ex. C at 8)

YA requests entry of judgment against the Defendants in the amount of $81,931,666.67, which represents the principal of the Note as well as pre- and post-default interest calculated through October 17, 2011.[3] (*See* Pl.'s Reply Br., pp. 12-14)

## II.    Defendants' Additional and Disputed Facts

Initially, Kothari and his wife, Hemangini Kothari, refused to sign the Guarantees. (Defs.' Br. in Opp'n to Partial Summ. J. ("Defs.' Br."), p. 5) Kothari alleges that he and his wife were induced into signing the Guarantees by YA and its officers, Troy Rillo and Liam Cox, in an e-mail dated June 28, 2007. (*Id*.) Kothari alleges that Rillo and Cox assured him that YA "would look to the assets of [the Debtor] before . . . pursu[ing] [his] personal home." (Affd. of Anil Kothari in Opp'n to Partial Summ. J. ("Kothari Affd."), Ex. 2 at ¶ 25) Kothari further alleges that discussions preceding the June 28, 2007 e-mail "covered all of [the Kotharis'] personal liability, not merely a potential loss of [their] home." (*Id*. at ¶ 28) As a result, Kothari

---

[3] Principal amounts to $41,000,000; pre-default interest calculated at 18% between July 19, 2007 and August 17, 2008 amounts to $13,060,777.78; and post-default interest calculated at 23% between November 17, 2008 and October 17, 2011 amounts to $27,870,888.89. (Pl.'s Reply Br., p. 14)

5

and his wife signed the Guarantees believing that their personal assets "would be a last resort[]" for YA. (*See* Defs.' Br., p. 5)

In addition, the parties understood construction financing was crucial to advance the project. Accordingly, YA agreed to subordinate its loan in favor of an $85 million construction loan. (*Id*. at pp. 5-9) In 2007, the Defendants allege that three Costa Rican banks, Banco Centroamericano de Integracion Economica, Banco de Costa Rica, and Banco Nacional de Costa Rica agreed to provide the $85 million construction financing for the first phase of the project. (*Id*. at p. 9; Kothari Affd., ¶ 46) The Defendants further allege that the Costa Rican lenders "issued a draft loan document to the Debtor with the expectation that [YA] would abide by its commitment to subordinate its [l]oan to the [c]onstruction [l]oan." (*Id*.) YA, however, allegedly refused to subordinate its loan. (Kothari Affd., ¶¶ 47-49)

The Defendants argue that YA's refusal to subordinate its loan was one in a series of acts designed to wrest control of the Property from the Debtor's control. (Defs.' Br., pp. 9-10) The Defendants allege, upon information and belief, that YA acted in bad faith by encouraging former employees to bring claims against the Debtor and to provide information regarding the Debtor's efforts to obtain construction financing. (*Id*. at p. 10) On April 3, 2008, the Debtor received a default letter from YA. (*Id*.) The Defendants argue that the alleged defaults were erroneously declared and the product of YA's continued efforts to gain control of the Property. (*Id*. at p. 11)

## DISCUSSION

### I.   Summary Judgment Standard

A court may grant summary judgment under Federal Rule of Civil Procedure 56(c), made applicable to adversary proceedings pursuant to Federal Rule of Bankruptcy Procedure 7056, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.* At the summary judgment stage, the role of the court "is not to weigh evidence, but to determine whether there is a genuine issue for trial." *Knauss v. Dwek*, 289 F. Supp. 2d 546, 549 (D.N.J. 2003) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). The court must construe facts and inferences in a light most favorable to the non-moving party. *See Am. Marine Rail NJ, LLC v. City of Bayonne*, 289 F. Supp. 2d 569, 578 (D.N.J. 2003) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986)). "Only evidence admissible at trial may be used to test a summary judgment motion. Thus, evidence whose foundation is deficient must be excluded from consideration." *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 471 (3d Cir. 1989) (citations omitted).

The moving party must make an initial showing that there is no genuine issue of material fact. *See Knauss*, 289 F. Supp. 2d at 549 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The burden then shifts to the non-moving party to "'make a showing sufficient to establish the existence of [every] element essential to the party's case, and on which that party will bear the burden of proof at trial.'" *Cardenas v. Massey*, 269 F.3d 251, 254-55 (3d Cir.

2001) (questioned on other grounds) (quoting *Celotex Corp.*, 477 U.S. at 322). The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48 (emphasis in original). An issue of fact is "genuine" if a reasonable juror could return a verdict for the non-moving party. *See id.* at 248. Furthermore, a material fact is determined by the substantive law at issue. *See Crane v. Yurick*, 287 F. Supp. 2d 553, 556 (D.N.J. 2003) (citing *Anderson*, 477 U.S. at 248). A fact is "material" if it might affect the outcome of the suit under governing law. *Id.* Disputes over irrelevant or unnecessary facts are insufficient to defeat a motion for summary judgment. *Anderson*, 477 U.S. at 248 (citation omitted).

However, even if material facts remain disputed, summary judgment may be proper if, after all inferences are drawn in the non-moving party's favor, the moving party is entitled to judgment as a matter of law. *Id.* at 248-50. Such a judgment is appropriate "as a matter of law" when the non-moving party has failed to make an adequate showing on an essential element of his or her case, as to which he or she has the burden of proof. *See Celotex Corp.*, 477 U.S. at 322-23. When one party moves the court for summary judgment, Federal Rules of Civil Procedure 54(c) and 56, taken together, permit the court to enter summary judgment on behalf of the non-movant, even if the non-movant has not filed a cross-motion for summary judgment. *See Peiffer v. Lebanon Sch. Dist.*, 673 F. Supp. 147, 151-52 (M.D. Pa. 1987) (citation omitted). On the other hand, a court must deny a motion for summary judgment when a genuine issue of material fact remains to be tried, or where the moving party is not entitled to a judgment as a matter of law.

## II.     Default Under the Note[4]

There is no legitimate dispute that the Debtor defaulted on its obligations to YA. Not only did the Superior Court find that the Debtor "committed a material breach" under the Note, but the Debtor failed to make any payment on the Note since it matured in January 2010. (Pl.'s

---

[4] The Defendants, both in their papers and at argument, merely suggested the Court review its jurisdiction in light of the Supreme Court's decision in *Stern v. Marshall*, 131 S. Ct. 2594, 180 L. Ed. 2d 475 (2011). As the Court previously noted, the Defendants "have clearly stated their preference and consent to the jurisdiction of the Bankruptcy Court in an effort to avoid piecemeal litigation." *In re Global Outreach, S.A.*, 2009 Bankr. Lexis 1602, at *32 (Bankr. D.N.J. June 8, 2009). "[P]arties may consent to entry of final judgment by bankruptcy judge in non-core case[.]" *Stern*, 131 S. Ct. at 2607 (citing 28 U.S.C. § 157(c)(2)); *see ARDI Ltd. P'ship v. Buncher Co. (In re River Entm't Co.)*, 2012 Bankr. Lexis 1375 (Bankr. W.D. Pa. Mar. 30, 2012) ("the Supreme Court reaffirmed the viability of the consent provisions with regard to non-core matters under 28 U.S.C. § 157(c)(2)"); *see also Bayonne Med. Ctr. v. Bayonne/Omni Dev., LLC (In re Bayonne Med. Ctr.)*, 2011 Bankr. Lexis 4748 (Bankr. D.N.J. Nov. 1, 2011) ("with the consent of the parties, this court may . . . determine noncore matters related to a Title 11 case").

Br., p. 5) The Defendants do not argue otherwise.[5] (Defs.' Response to YA's Rule 56.1 Stmt. of Material Facts ("Defs.' Responsive Stmt. of Facts"), ¶ 16) The language of the Guarantees is unconditional and unequivocal. Given that neither the Debtor nor the Defendants have made any payment under the Note, the Defendants have similarly defaulted on their obligations under the Guarantees. (Rillo Cert. ¶¶ 11-12, Ex. H; Defs.' Responsive Stmt. of Facts, ¶ 21) Moreover, as YA conceded at argument, there is no dispute that YA agreed to subordinate its loan "at the consummation of construction financing in the amount of [$85 million] . . . ." (Defs.' Br., p. 7) The Defendants, however, argue that YA acted in bad faith by refusing to subordinate its loan thereby sabotaging the project and "manufacturing" the Debtor's defaults.

In New Jersey, every contract includes an implied covenant of good faith and fair dealing. *See Wilson v. Amerada Hess Corp.*, 168 N.J. 236, 241 (2001); *see also* Restatement (Second) of Contracts § 205 (1981) ("Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement."). The covenant requires that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract . . . ." *Wood v. New Jersey Mfrs. Ins. Co.*, 206 N.J. 562, 577 (2011) (quoting *Kalogeras v. 239 Broad Ave., L.L.C.*, 202 N.J. 349, 366 (2010)). To prove a breach of the covenant one must "provide evidence sufficient to support a conclusion that the party alleged to have acted in bad faith has engaged in some conduct that denied the benefit of the bargain originally intended by the parties." *Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs.*, 182 N.J. 210, 225 (2005) (quoting 23 Williston on Contracts § 63:22, at 513-14 (Lord ed. 2002); *see Wilson*, 168 N.J. at 251 ("[b]ad motive or intention is essential" to proving a breach of the covenant). A party's conduct may violate the covenant even though its "performance does not violate a pertinent express term." *Wade v. Kessler Inst.*, 172 N.J. 327, 341 (2002). Still, the covenant of good faith and fair dealing, like other implied terms, cannot override an express term in the contract. *Id.*

In this case, the Defendants argue that YA breached the covenant of good faith and fair dealing by engaging in conduct designed to frustrate its dealings with the Debtor. Specifically, the Defendants claim that YA erroneously declared defaults and refused to subordinate its loan "when the Debtor was on the verge of obtaining the $85 million construction loan[.]" (Defs.' Br., p. 20) The Defendants allege that "[d]espite repeated requests by the Debtor to YA [] to subordinate its Note to the Construction Loan, it never did." (Kothari Affd., ¶ 47) Kothari further recalls "that [his] lawyer wrote several strongly worded letters to [YA's] prior counsel

---

[5] "On November 17, 2008, on the motion of YA [], the Chancery Court declared a *material default* under the [] Note by reason of [the Debtor's failure to sell 32 condominium units by August 1, 2008." (Kothari Affd., ¶ 80) (emphasis added). "[YA's] actions also prevented the Debtor from meeting its condominium sales benchmarks and making a $10 million payment to YA [] under the Loan Documents, which was due on January 1, 2009." (Kothari Affd., ¶ 72)

objecting to its refusal to subordinate its Note to the $85 million construction loan." (*Id*. at ¶ 48) Indeed, YA admits that "Debtor's counsel wrote to YA objecting to YA's refusal to subordinate its Note." (Pl.'s Response to Defs.' Rule 56.1 Statement of Facts, ¶ 57)  But, YA denies that "a construction loan existed and that YA had an obligation to subordinate its loan in the face of an event of default of the Note and the NPA." (*Id*.)  Kothari's allegations ostensibly demonstrate the existence of a disputed fact concerning YA's alleged refusal to subordinate.  There is some doubt, however, as to whether the dispute is genuine or whether it concerns a material fact.

YA agreed to subordinate its loan "upon the consummation of a construction financing [loan][.]" (Defs.' Br., p. 7)  Logically, YA could refuse to subordinate only in the face of an obligation to do so.  While the covenant of good faith does not require a party to violate an express term; courts must "respect and give effect to the parties' bargain as expressed in the contract[.]" *Wilson v. Hess*, 168 N.J. 236, 250 (2001); *see Glenfed Fin. Corp. v. Penick Corp.*, 276 N.J. Super. 163, 175 (App. Div. 1994) (an agreement cannot be varied by an implicit covenant of good faith and fair dealing) (citing *Hall v. Resolution Trust Corp.*, 958 F.2d 75, 79 (5th Cir. 1992)).  Here, the express terms of the loan documents set forth the event that triggers YA to subordinate.  If the triggering event did not occur, the Defendants cannot use the implied covenant of good faith to override or "read-out" an express term.  *See generally Coldwell Banker Real Estate, LLC v. Plummer & Assoc.'s, Inc.*, 2009 U.S. Dist. Lexis 91920, at *9-12 (claim for breach of implied covenant dismissed for failure to state a claim where, if enforced, it would override "a clear and explicit trigger for the . . . performance").  "It is of course not the province of the court to make a new contract or to supply any material stipulations or conditions which contravene the agreements of the parties." *IJKG, LLC v. Bayonne Med. Ctr. (In re Bayonne Med. Ctr.)*, 2009 Bankr. Lexis 1002, at *55 (Bankr. D.N.J. Feb. 3, 2009) (quoting *Onderdonk v. Presbyterian Homes of N.J.,* 85 N.J. 171, 183 (1981)).  In the Court's view, much of the Defendants' case turns on whether or not there was a construction financing agreement in place.  The Defendants allege that a consortium of Costa Rican banks agreed to provide the loan and that a "draft loan document" was issued.  (Kothari Affd., ¶ 46)  Kothari sets forth bald allegations that, at best, depict an informal agreement, rather than a binding obligation to lend subject to YA's subordination.  Notably, neither a letter of intent nor the draft documents were submitted with the Defendants' papers.  An $85 million construction financing arrangement is not a casual transaction.  Rather, it is a transaction necessarily attended by substantial documentation and negotiation.  The existence of construction financing has not been demonstrated.  Thus, on the facts before the Court, it does not appear that YA's alleged refusal to subordinate was in breach of its obligations under the Note or NPA nor does it appear to have undermined any construction financing agreement allegedly obtained by the Debtor.

The Defendants' remaining allegations of bad faith and improper motive, such as YA's erroneous declaration of default and YA's attempts to drum up litigation against the Debtor, are likewise unsupported and insufficient to create a genuine dispute of material fact.  Kothari alleges "upon information and belief" that Rillo and Cox approached former employees seeking "dirt" on Kothari and encouraged them to bring claims against the Debtor.  (*Id*. at ¶¶ 54-56) Federal Rule of Civil Procedure 56 requires an affidavit opposing summary judgment "be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." *Arrowood Indem. Co. v. Hartford Fire Ins. Co.*, 774 F. Supp. 2d 636, 647 (D. Del. 2011) (citing Fed. R. Civ. P. 56(d)); *see United States v.*

*Rocky Mt. Holdings, Inc.*, 782 F. Supp. 2d 106, 114 (E.D. Pa. 2011) ("Statements in affidavits made only on belief or on information and belief may not be considered in support of or in opposition to summary judgment") (citing *Mosley v. City of Pittsburgh Pub. Sch. Dist.*, 2009 U.S. Dist. Lexis 81174, at *1 (W.D. Pa. Sept. 8, 2009)). The allegations that YA erroneously declared defaults under the Note and NPA are similarly deficient. These allegations are largely conclusory or statements of opinion. (Kothari Affd., ¶¶ 57-63) "[T]he affiant must ordinarily set forth facts, rather than opinions or conclusions." *Arrowood Indem. Co.*, 774 F. Supp. at 647 (quoting *Maldonado v. Ramirez*, 757 F.2d 48, 51 (3d Cir. 1985)). Kothari simply fails to "point to concrete evidence in the record which supports each essential element of his case." *United States v. Spaulding Composites Co.*, 1997 U.S. Dist. Lexis 24095, at *7 (D.N.J. Jan. 22, 1997) "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses[.]" *Celotex Corp.*, 477 U.S. at 323-24. There is no genuine dispute of material fact. Thus, summary judgment is granted in YA's favor.

Alternatively, as YA points out, the Court has been asked to consider the above facts and allegations on numerous occasions. Both the Debtor and the Defendants asserted claims and counterclaims against YA for, among other things, fraud, breach of the implied covenant of good faith and fair dealing, and breach of contract. Those claims were rooted in the same facts and allegations underlying the Defendants' defenses here.[6] YA moved for summary judgment against the Debtor. The Debtor did not contest or otherwise respond to the motion. On January 29, 2010, the Court granted summary judgment in YA's favor and dismissed *with prejudice* all claims of the Debtor, except for the claim seeking to establish the validity, priority, and extent of YA's lien in certain property.[7] Also in January 2010, YA moved to dismiss the Defendants' counterclaims and third-party complaint arguing on grounds that they lacked standing. In a letter dated March 1, 2010, the Defendants conceded lack of standing and consented to a dismissal on that ground without expressly reserving any rights or defenses.[8] Consequently, the Court entered an Order granting summary judgment in YA's favor and dismissed *with prejudice* the counterclaims and third party complaint of the Defendants.[9] Neither Order contained an express condition or otherwise qualified the dismissal of claims.

---

[6] *See* Amended Complaint filed by the Debtor [Adv. Pro. 09-01415, ECF Doc. 5], dated Apr. 8, 2009 at ¶ 51 ("YA refused to subordinate to the Construction Lenders and . . . improperly declared a default."); *see also* (Rillo Cert., Ex. E ("Defendants' Answer"), ¶ 42) (alleging that YA improperly declared default and "will assuredly refuse to subordinate its loan to the Construction Loan.")

[7] Order Granting YA Global Investments, L.P.'s Motion for Summary Judgment as to All of the Claims of the Debtor, Global Outreach, S.A. in the Above-Captioned, Consolidated Adversary Proceedings with the Exception of Count One of the Debtor's Amended Complaint in Adv. Pro. No. 09-1415 [Adv. Pro. 09-01415, ECF Doc. 94], dated Jan. 10, 2009.

[8] Letter Re: Conesent [*sic*] to Entry of Order Dismissing Counterclaims [Adv. Pro. 09-01415, ECF Doc. 96], dated Mar. 1, 2010.

[9] Order Granting YA Global Investments, L.P.S. Motion for Summary Judgment as to all of the Claims of the Non-Debtor Parties in Adversary Proceeding Number 09-1712 [Adv. Pro. 09-01415, ECF Doc. 98], dated Mar. 18, 2010.

Accordingly, YA argues that the Defendants "let go" of the claims they now seek to litigate in defending against the instant motion.

The above Orders are interlocutory and thus, are not typically given preclusive effect. *Gallant v. Telebrands Corp.*, 35 F. Supp. 2d 378, 393 (D.N.J. 1998) ("Partial summary judgment . . . is not entitled to res judicata or collateral estoppel effect in other litigation"). In addition to granting partial summary judgment, however, the orders dismissed the Debtor's claims and the Defendants' counterclaims *with prejudice*. A dismissal with prejudice "constitutes an adjudication of the merits as fully and completely as if the order had been entered after trial." *Gambocz v. Yelencsics*, 468 F.2d 837, 840 (3d Cir. 1972) (quoting *Lawlor v. National Screen Service Corp.*, 349 U.S. 322, 327 (1955)); *see Ferrato v. Castro*, 888 F. Supp. 33, 34 (S.D.N.Y. 1995) (voluntary dismissal with prejudice pursuant to Fed. R. Civ. P. 41(a)(2) "has the effect of a final adjudication on the merits"); *see also Gen. Dev. Corp. v. Binstein*, 743 F. Supp. 1115, 1129 n.1 (D.N.J. 1990) (standard under Rule 56 and Rule 41 are "basically the same"); *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986) (stipulated dismissal with prejudice constitutes a final judgment with preclusive effect). Generally, a judgment "entered by consent or agreement of the parties, is res judicata to the same extent as if entered after contest." *Allegheny Int'l v. Allegheny Ludlum Steel Corp.*, 40 F.3d 1416, 1429 (3d Cir. 1994) (construing Pennsylvania law); *Board of Tr.'s of Trucking Emp.'s of New Jersey Welfare Fund, Inc. v. Centra*, 983 F.2d 495, 504 (3d Cir. 1992) ("for purposes of claim preclusion, judgments entered by consent are final judgments on the merits"). The Defendants did not address the Court's earlier decisions in their papers, nor did YA extensively brief any preclusionary doctrine. At argument, the Defendants asserted that the March 16, 2010 judgment dismissed their counterclaims for lack of standing. Accordingly, the Defendants argued, without reference to any authority, a distinction between standing to bring a claim and standing to assert a defense. Assuming, *arguendo*, that such a distinction exists, it should be of no import in this case.[10] In their papers, the Defendants oppose the instant motion by asserting a breach of the covenant of good faith and fair dealing  Thus, their defense is identical to a claim already dismissed with prejudice. It seems that the Defendants are relying on their "Eighth Defense" as set forth in their complaint in the Removed Proceeding. The defense provides that the Defendants "incorporate their counterclaim as an affirmative defense[.]" (Rillo Cert., Ex. E at p. 13). The counterclaims, however, no longer exist. To now countenance the Defendants' argument would ignore the Court's earlier decisions and result in re-litigation of issues previously ruled on.

---

[10] The Court doubts that defenses premised on the dismissed counterclaims survive. *See Access 4 All, Inc. v. Grandview Hotel L.P.*, 2006 U.S. Dist. Lexis 29574, at *6-7 (E.D.N.Y. Mar. 23, 2006) ("[c]onsent decrees are entered into . . . after careful negotiation has produced agreement on their precise terms. The parties waive their right to litigate the issues involved in the case[.]") (quoting *United States v. Armour & Co.,* 402 U.S. 673, 681 (1971)). There is no reason why a party consenting to entry of judgment dismissing claims with prejudice should be any less careful. *See Shores v. Sklar*, 885 F.2d 760, 762 (11th Cir. 1989) ("Where the parties have agreed to entry of an order or judgment without any reservation relevant to the issue sought to be appealed, one party may not later seek to upset the judgment").

In sum, the Defendants fail to demonstrate the existence of a genuine issue of material fact. Instead, they raise defenses rooted in claims that were dismissed with prejudice. In doing so, the Defendants invite the Court to reverse two decisions rendered on the same facts and claims, which were resolved in YA's favor. This argument must fail. Thus, the Court grants summary judgment in favor of YA.

### III.    Parol Evidence Rule

The Defendants argue that YA may not yet pursue the Kotharis' personal assets because YA is bound by the e-mail, dated June 28, 2007, in which YA assured "that in the event of default [YA] would look to the assets of the company before [it] would pursue [the Kotharis'] personal home." (Defs.' Br., p. 5)  This e-mail, the Defendants argue, was meant to induce the Kotharis to sign the Guarantees and therefore constitutes a separate agreement that was not superseded by the Guarantees. Given that YA's loan may be satisfied through a disposition of the Property, the Defendants assert that any attempt to collect from the Kotharis is premature. YA counter-argues that the parol evidence rule bars the Defendants from altering the plain language of the Guarantees.

The parol evidence rule operates to "prohibit[] the introduction of evidence that tends to alter an integrated written document[,]" and applies to both "documentary as well as oral evidence[.]" *Conway v. 287 Corporate Ctr. Assoc.'s*, 187 N.J. 259, 268 (2006). The parol evidence rule, however, does not prevent admission of extrinsic evidence to prove fraud in the inducement. *Film Life, Inc. v. Mal "Z" ENA, Inc.*, 251 N.J. Super 570, 573-74 (App. Div. 1991). "It is well settled that a party to an agreement cannot, simply by means of a provision in [a] written instrument, create an absolute defense or prevent the introduction of parol evidence in an action based on fraud in the inducement to contract." *Ocean Cape Hotel Corp. v. Masefield Corp.*, 63 N.J. Super. 369, 377-78 (App. Div. 1960). The fraud exception is not without its limitations. It does not apply to "matters expressly addressed in the integrated writing." *Film Life*, 251 N.J. Super. at 574; *see Travelodge Hotels, Inc. v. Honeysuckle Enter.*, 244 Fed. Appx. 522, 526 (3d Cir. 2007). The fraud exception concerns only "matters wholly extraneous to the writing." *Film Life*, 251 N.J. Super. at 574; *see Winoka Village, Inc. v. Tate*, 16 N.J. Super. 330, 334 (App. Div. 1951) (the exception applies where the signature was "obtained by fraud or imposition in the execution of the contract, as by reason of a willful misrepresentation as to its purport or contents[] . . . and when the fraud[] [] inducing the signature is as to a thing not dealt with at all in the agreement.").

The *Winoka* court encountered an argument similar to the argument advanced by the Defendants, albeit in the context of a far less complex transaction. In *Winoka*, the defendant-tenant claimed that he was fraudulently induced by plaintiff-landlord to sign two, three-year leases. Prior to signing, the defendant told the landlord that he could not enter a three-year lease due to uncertainty in his employment situation. The plaintiff's superintendent assured him that the policy was to retain the security deposit and that "nothing more would be required of him." *Id*. at 332. The defendant claimed to have entered the leases in reliance on those statements even though the lease agreement expressly stated a three-year term. Subsequently, the defendant left before the expiration of the term and was sued by the plaintiff to recover back rent. The plaintiff

12

prevailed on appeal, where the court held that extrinsic evidence was "not effectual in that circumstance to avoid the obligations [the defendant] knowingly assumed." *Id*. at 333.

Here, the Defendants signed written contracts containing an integration clause. (Rillo Cert., Ex. C at p. 7); *see Panaccione v. Holowiak*, 2008 N.J. Super. Unpub. Lexis 1809, at *21 (App. Div. Nov. 12, 2008) (citing *Harker v. McKissock*, 12 N.J. 310, 321-22 (1953) ("The essence of voluntary integration is the intentional reduction of the act to a single memorial; and where such is the case the law deems the writing to be the sole and indisputable repository of the intention of the parties"). Further, the fraud exception to the parol evidence rule does not apply as the language of the June 28, 2007 e-mail clearly contradicts the express terms of the Guarantees by imposing a condition on enforcement. The Guarantees expressly state that the Defendants "unconditionally guarantee[] to [YA] the prompt and complete payment and performance when due (whether at stated maturity, by acceleration or otherwise) of all . . . amounts under the Note[.]" (Rillo Cert., Ex. C at p. 1) The Guarantees further provide that the Defendants waived "[a]ny right to require [YA] to (i) proceed against [the Debtor] . . . (ii) proceed against or exhaust any security, or (iii) pursue any other remedy." (*Id*. at p. 4) By relying upon the e-mail, the Defendants vary the unequivocal terms of the Guarantees. The Court notes that the Defendants are highly sophisticated and experienced parties and that the Guarantees are dated July 19, 2007, nearly one month after the e-mail allegedly promising different terms.

Still, the Defendants argue that equitable estoppel should be applied to give effect to the terms of the June 28, 2007 e-mail. However, this case falls squarely within the bounds of the parol evidence rule. Contracting parties "are usually bound by the import of documents signed by them and which they had the ability and opportunity to read." *Winoka Village*, 16 N.J. Super. at 333. The June 28, 2007 e-mail is inadmissible to contradict the express terms of the Guarantees.

Lastly, YA seeks attorneys' fees as provided for in both the Guarantees and the Note. Generally, New Jersey courts follow the "American Rule," whereby "the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser." *N. Bergen Rex Transp. v. Trailer Leasing Co.*, 158 N.J. 561, 569 (1999) (citing *Rendine v. Pantzer*, 141 N.J. 292, 322 (1995)) (citation omitted). Still, it is well established that attorneys' fees are recoverable if authorized by statute, court rule, or contract. *Satellite Gateway Com. v. Musi Dining Car Co.*, 110 N.J. 280, 285 (1983). Accordingly, summary judgment is granted in YA's favor as to attorneys' fees.

## **CONCLUSION**

The Debtor is in default of its payment obligations under the Note. Similarly, the Defendants have breached the Guarantees by failing to pay the amount due under the Note. Accordingly, judgment is entered in YA's favor for the principal due, pre-default interest, and post-default interest. The judgment totals $81,931,666.67 as of October 17, 2011.

YA is entitled to reasonable attorneys' fees in connection with bringing the within motion for partial summary judgment against the Debtor and the Defendants. YA's counsel is to file a

certificate of services rendered in connection therewith within twenty (20) days of receipt of this Opinion. The Court will then enter an award.

      An Order in conformance with this Opinion has been entered by the Court and a copy attached hereto.

                                                      *s/ Donald H. Steckroth*

                                                      DONALD H. STECKROTH
                                                      UNITED STATES BANKRUPTCY JUDGE

Dated: May 4, 2012